JACOB BAKEMAN *v.* ABSALOM TALBOT.

Where, by the report of the commissioner appointed by the court to make partition of land between heirs, the right of way is reserved across certain parts of the partitioned premises, for the purpose of enabling certain heirs to have access to wood land set to them, the party whose premises is burdened with this right of way is bound to make its use as convenient as the mode of access which the farmer usually provides for himself to get to and from his wood land.

In the absence of any specific agreement between the parties, one whose premises is burdened by such an easement is bound to afford reasonable facilities for its enjoyment by the other party.

THE action is in the nature of a bill in equity to establish a right of way claimed by the plaintiff over the land of the defendant, and to enjoin the latter from continuing certain fences which he had erected, and to compel him to remove them. A farm, of which the premises owned by the plaintiff and those owned by the defendant are parcels, embracing a certain lot No. 179, was formerly owned by one De Groot, who died intestate in 1838, leaving children, to whom the land descended. Partition was made between them by suit in chancery in the year 1839. The commissioners appointed by the court to make partition divided the farm into several smaller lots, and allotted the one numbered 12 to the party under whom the plaintiff derived title by a subsequent conveyance. Lots numbers 9, 10 and 11 were set off to parties under whom the defendant subsequently acquired title. The four lots were wood lots, and lay adjoining each other, and are bounded on the north by the northerly line of the original farm, the plaintiff's being the eastermost of the four lots. There is a public highway running westerly of the lots. The report of the commissioners (which was confirmed by the court) contains the following provision: "The right of way or passage is reserved to the said heirs respectively, and to their heirs and assigns, from the highway, near the west line of said lot number 179, and immediately adjoining the north line of the farm aforesaid, and extending

east along the north line of said farm to the extreme east
corner of the wood lots aforesaid, to enable them to pass to
and from their respective wood lots for the purpose of obtain-
ing wood and timber therefrom, or for any other purpose."
The plaintiff's lot remained unimproved, but the defendant's
had been cleared and were under cultivation.   The defend-
ant, before the commencement of the suit, had built a fence
between his eastermost lot and the plaintiff's lot, and also
fences between each of his other lots, each fence running
quite to his northerly line.   Two of the fences were built
with stakes, "with rails to slip between them like bars."
The other was of rails, and had what is called in the case a
"slip gate" at the northerly end, which was the place he
passed, so that the rails could be taken out and turned round,
and so that the plaintiff could pass through.   After the com-
mencement of the suit, the defendant put up bars on the
lines of three of the lots.   The plaintiff's premises being a
wood lot, he had no occasion to use the reserved passage way
except at long intervals.

The plaintiff claimed that the defendant ought to have
placed gates at the place of passage, but this the defendant
refused to do, upon which the plaintiff threatened to leave
the fences down, and the defendant threatened him with per-
sonal violence if he should do so.

The judge (Hon. DANIEL PRATT, before whom the case
was tried without a jury), after stating the foregoing particu-
lars as conclusions of fact, determined, that although the
plaintiff was entitled to a right of passage over the defend-
ants' land at the place indicated, yet that the maintaining
the fences there was not an obstruction which the plaintiff
was entitled to have removed.   Judgment was accordingly
given in favor of the defendant, with costs, upon which the
plaintiff prosecuted this appeal.

The case was submitted on printed points.

*A. J. Parker*, for the appellant.

*L. H. & F. Hiscock*, for the respondent.

DENIO, Ch. J. No question is made but that the plaintiff is entitled to a right of way or passage across the north end of the defendant's land. The extent of that right, and the duty of the respective owners towards each other, is to be determined by the language of the reservation and the circumstances of the case. The plaintiff insists, in substance, that the defendant was bound to keep open a narrow road or lane across the north end of his land, or if he will not do this, that he should, at least, insert swinging gates in his fences which might be opened and shut with ease whenever the plaintiff had occasion to pass. What the defendant did, as I understand the testimony and the judge's conclusions, was to subdivide his land in the manner which he found convenient for its occupation, running the fences quite to his northerly line, making arrangements, however, at the place indicated for passage, by which the bars or rails could be readily removed and conveniently replaced when the plaintiff should have occasion to go through. This would no doubt be somewhat less beneficial to the plaintiff than either a clear space like a common road, or a series of gates which could be opened and shut like doors. But it would be much less onerous to the defendant, who, upon the plaintiff's position, would have to forego the use of a considerable strip of land, and, in addition, to build a lateral fence across the whole north end of the premises, or to incur considerable expense in erecting gates. I am of opinion that the defendant's position presents the more reasonable view of the case. The main object of the reservation in the commissioner's report, was to enable those of the proprietors who should become the owners of the lots most remote from the highway to go upon and pass over the land of the others situated between them and the highway, without committing a trespass, and to define the direction of such passage. We are not to intend that it was designed to make the burthen unnecessarily onerous. The circumstance that the land was wholly in forest, and that the primary purpose indicated was the carrying of wood and timber, do not suggest the necessity of a thoroughfare like a highway, or an unimpeded

private way. If the passage was made as convenient as the mode of access which a farmer usually provides for himself, to get to and from his wood land, it seems to me. that the purposes of the reservation would be confirmed. De Groot formerly possessed the whole farm. It was about to be subdivided and assigned in severalty to different owners. It would be improper that those to whom back lots were assigned should be precluded from getting to the highway except by committing a trespass, or by claiming a way by necessity, a right but little known and not of convenient application. Moreover the exigencies of the case did not contemplate a constant use of the passage, but only such an occasional use as the resort to wood land would require, and such as the plaintiff has since exercised. There is no reason to believe that if the plaintiff, besides owning the back wood lot, had also been the proprietor of the intervening cleared land, he would have found it necessary or thought it expedient to have fenced out a lane, or have erected these gates for his use in passing to and from his timber land, and if he would not have done so it is unreasonable to require it of the defendant. The defendant certainly has no right to preclude the plaintiff from availing himself of the right of passage, or to render the exercise of that right unusually or unreasonably difficult or burthensome. I think he is not shown to have done so. It must be kept in mind that the plaintiff's lot is still wood land. It may remain so for many years; but it may be cleared up and cultivated, and have buildings erected on it and be applied to such uses as to require constant and frequent passage between it and the highway. There is nothing inconsistent in holding that the present arrangements are suitable and sufficient under existing circumstances; and after these circumstances have changed, and the question shall arise as to what shall then be proper, to determine that a passage perpetually open or a system of gates better adapted to such increased use than the present fences and bars, shall be required of the defendant. It would not be right at this time to oblige the defendant to furnish facilities for a state of affairs which may

never arise, or which may not arise until some remote period. The doctrine that the facilities for passage where a private right of way exists, are to be regulated by the nature of the case and the circumstances of the time and place, is very well settled by authority. (*Hemphill* v. *The City of Boston*, 8 Cush., 195; *Cowling* v. *Higinson*, 4 Mees. & Wels., 245.) The last case determines, in effect, that the extent of the privilege created by the dedication of a private right of passage depends upon the circumstances, and raises a question for the determination of a jury. If, therefore, in the present case I felt less confidence in the conclusion I have stated than I do, I should hold the question had been settled by the judge sitting in the place of a jury in a manner that we could not disturb.

The judgment should be affirmed.

BROWN, J. This action is brought to remove certain obstructions from a private way claimed by the plaintiff over certain lands of the defendant, and for an injunction. The case was heard before Mr. Justice PRATT without a jury, who ordered judgment against the plaintiff, which was affirmed at the General Term.

Both the plaintiff and the defendant derive their title to the lands referred to in the pleadings and proofs from James De Groot, deceased, who died seized of them. Some time about the year 1839, upon a bill filed in the late Court of Chancery for a partition, certain commissioners were appointed to make partition, who divided the lands into lots numbered from No. 1 to No. 13 inclusive. The division lines of the lots run north and south, and are bounded on the north by the lands of Chester Fellows. In the decree of partition there is the right of way claimed by the plaintiff in the following words: "the right of way or passage is reserved to the said heirs respectively, and to their heirs and assigns, from the highway near the west line of lot No. 179 (being the premises partitioned), and immediately adjoining the north line of the farm aforesaid, and extending east along the north line of said farm, to the extreme northeast corner of the

wood lots aforesaid, to enable them to pass to and from their respective wood lots for the purpose of obtaining wood and timber therefrom, or for any other purpose." The defendant is the owner of lots Nos. 9, 10 and 11, and the plaintiff is the owner of lot No. 12, in fee by title derived from the heirs of James De Groot, and it has been necessary for the plaintiff occasionally to pass along and upon the way reserved to and from his lot No. 12, over lots Nos. 9, 10 and 11. There are three fences put up by the defendant across the way. One between lots Nos. 11 and 12, another between Nos. 10 and 11, and another between lots Nos. 9 and 10. In two of the fences he put stakes with rails to slip between them like bars, so as to be easily removed, and in the other he put what is called a slip gap, where the rails could be taken out and turned round, so that the plaintiff could pass and repass. These were the obstructions complained of. The plaintiff used the way at considerable intervals of time to get his wood, and the lots of the defendant were under cultivation. The claim of the plaintiff proceeds upon the theory that he is entitled to an open road, free from fences, with gates, bars and openings, which can be opened and closed at pleasure, and this is the only question presented by the appeal.

The easement is a right of passage without defining the manner of its enjoyment with or without bars or gates over the agricultural lands of the defendant. Nothing passes as an incident to such a grant, but what is requisite to its fair enjoyment. That must be the reasonable and usual enjoyment and user of such a privilege. The fee of the land still remains in the grantor of such a privilege, and he may use his lands and appropriate them to such purposes as he pleases, consistent with the grantee's right of passage to and fro. The plaintiff claims that the lands of the defendant shall be thrown open without fences or protection, or that he shall be required to erect a fence upon both sides of the way throughout its entire length, leaving the entrance open at the western end. The first of these propositions would, in effect, deprive the defendant of the use of his lands for cultivation, while the second would entail upon him an amount of expense

in the making and maintaining the fences, quite as damaging in its consequences. The grantee of a private way is bound to keep it in repair, and cannot deviate from it and go upon another part of the grantor's lands, when it becomes impassable by floods or otherwise. And this shows that he must do whatever may be necessary to the reasonable and proper enjoyment of the right.

The judgment of the Supreme Court should be affirmed.

Judgment affirmed.