## ISAIAH S. MATTHEWS AND RODERICK T. PECK, EXECUTORS, ETC., OF DANIEL R. STOW, DECEASED, RESPONDENTS, v. PRESIDENT, ETC., OF THE DELAWARE AND HUDSON CANAL COMPANY AND JAMES P. GREEN, APPELLANTS.

*Grant of land, reserving an easement to the grantor — the grantee may use the land if he does not unnecessarily interfere with the enjoyment of the easement — When an equitable action affecting land survives to the plaintiff's executors — Right to recover damages in an equitable action, though the party is not entitled to the equitable relief sought — evidence as to damages.*

The owner of a farm conveyed to a railroad company a portion thereof, upon which was a spring from which he had been accustomed to conduct water by wooden pipes to supply his farm, by a deed which contained a provision " excepting and reserving from the above-described premises the spring issuing from said land, with the privilege, as now held by the parties of the first part, in the use and occupation of said spring, with access to and from said

spring to repair, relay with logs or otherwise, without any damage whatever to said spring in consequence of the construction of said railroad."

*Held,* that the title to the land passed to the grantee subject to the easement, and that it was entitled to use and enjoy the land in all lawful ways not inconsistent with the right reserved to the grantor, and that it was entitled to lay its tracks over the spring on protecting its waters from injury, so as not unnecessarily to interfere with the enjoyment of the easement reserved by the grantor.

What evidence is inadmissible, as to the damages sustained by the owner of the easement by reason of his being temporarily deprived of the water from the spring, considered.

Where a plaintiff dies during the pendency of an action, brought by him to restrain an unlawful interference with an easement reserved by him in a conveyance to the defendant, and to recover the damages occasioned thereby, his personal representatives are entitled to revive and continue the action for the purpose of recovering such damages, though they take no interest in the real estate, and are not entitled to the injunction sought by the deceased.

Damages are recoverable in an equitable action, though the plaintiff fails to establish his right to the equitable relief demanded.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee.

The referee found, among other things, that on or about the 4th day of March, 1865, one Stow and other persons owning a farm conveyed a portion thereof to the Albany and Susquehanna Railroad Company, upon a portion of the land so conveyed was a spring from which the owners of the farm were accustomed to conduct water to supply the farm by means of wooden pipes. The deed contained the following clause : " Excepting and reserving from the above described premises the spring issuing from said land with the privilege, as now held by the parties of the first part, in the use and occupancy of said spring, with access to and from said spring to repair, relay with logs or otherwise, without any damage whatever to said spring in consequence of the construction of such railroad."

In the year 1870, the said Daniel R. Stow acquired and was the owner and in the possession of all the right, title and interest in said farm and spring before mentioned which were not conveyed by said deed of March 4, 1865, to the Albany and Susquehanna Railroad Company, and he remained the sole owner, thereof until the time he died, which occurred November, 1873.

After the conveyance of the said parcel of the said farm to the

Albany and Susquehanna Railroad Company, the said company constructed its roadway on the westerly side thereof, with an embankment several feet higher than the level of said spring. The easterly side of said embankment at the nearest point was about twenty-eight feet west of said spring, and upon it said company laid its railroad track ; but such construction in no way interfered with or injured said spring.

The defendant, The President, Managers and Company of the Delaware and Hudson Canal Company, is a corporation, and in the year 1870, and after the construction of the railroad of said Albany and Susquehanna Railroad Company, became the lessee thereof, together with the lands, tenements, rights and privileges belonging thereto, as alleged in the answer herein.

Previous to the commencement of this action, the defendant commenced the construction of a branch railroad known as the Lackawanna and Susquehanna Railroad, extending from some point in the State of Pennsylvania northerly, and passing across the easterly side of said parcel of land conveyed by the deed of March 4, 1865, and intersecting the Albany and Susquehanna Railroad a few rods north of the spring in question, and said defendant was engaged in the construction thereof when this action was commenced.

To construct the same and lay the main and side tracks thereof, and also side tracks on the east side of the main track of the Albany and Susquehanna Railroad, rendered necessary by the construction of such branch railroad, it became necessary to extend the embankment which had been made across said parcel of land, further to the east, to near the east line thereof, and also to provide for laying one of the tracks of said branch railroad over said spring; and the defendant thereupon extended said embankment accordingly for the purposes aforesaid, to near the east line of the said parcel of land: and to provide for laying one of the tracks of the said branch road over the said spring, and also to preserve and protect the spring, the said defendant, on or about the 15th of August, 1871, commenced to make an excavation in and about the said spring for the purpose of surrounding the same with masonry to be carried up perpendicularly in the form of a well to the level of said embankment.

In making such excavation, the pipe connecting with the said spring and conducting the water from it was removed, and the flow of the water from the spring into the said pipe and the pump logs was cut off, and the said Daniel R. Stow was thereby deprived of the use, benefit and enjoyment of the said water, and such deprivation thereof continued at the time this action was commenced.

After making such excavation, the said defendant began the construction of a circular wall around said spring, with an interior diameter from side to side of about three feet, extending from the bottom of said excavation upward toward the grade of said railroad, which was about eight feet above the bottom of the spring ; said wall was laid in cement on the north, east, and south sides, but dry on the west side to admit the water through the wall into the well, into which there was also an opening, on the west side through a covered ditch or drain, to admit the water of the spring into the well.

While said defendant was engaged in building the said wall around the said spring, and on the 12th day of September, 1871, at which time the wall had been carried to the height of about five feet, this action was commenced by the said Daniel R. Stow, and the injunction order issued therein was served upon the defendant Green, who was engaged in the prosecution of said work as an engineer and employee of the corporation defendant, and under its direction, and soon thereafter it was served upon the corporation defendant.

By said injunction the defendants were commanded and enjoined, among other things, that they and each of them desist and refrain from digging around, walling up, covering over, or in any manner interfering with the said spring.

All the acts done at and about said spring before mentioned, from their commencement on or about August 15, 1871, to the commencement of this action, were done under the supervision and direction of the defendant Green, who during that time was an engineer of the corporation defendant, acting under and in pursuance of its direction and in pursuance of its plans and purpose to wall up the said spring in the manner before stated to the grade of the said road, place a cover over the same at the surface

with a trap or lid in the center opening upward, to afford access to said spring for cleansing and other purposes, and draw the water therefrom by means of a pipe passing through the wall just above the bottom of the spring and connecting with said wooden pump-logs, and were done without the consent and against the will of said Daniel R. Stow, and were a damage and injury to said spring and to his rights.

On the 24th day of August, 1871, said Daniel R. Stow caused a notice to be served upon the defendants, informing them of his rights in and to the said spring, and of the reservation of the same contained in the deed of March 4, 1865, and requiring them to put the spring in its former condition, and notifying them that he would not permit them either to stone or fill around it in the manner prosposed by them, and thereafter said work was continued by them with full knowledge of his rights in respect to said spring.

The said Daniel R. Stow died in November, 1873, leaving a last will and testament, which was afterward duly proved before the surrogate of Chenango county, and admitted to probate, and letters testamentary were thereupon granted and issued by said surrogate to the plaintiffs, who were named and appointed therein as the executors thereof, and they accepted such office, took the required oath, and have since acted as such.

The executors were authorized to sell the testator's real estate, but took no interest therein.

The damages which had been sustained by the said Daniel R. Stow, at the time this action was commenced, by reason of the said acts of the defendants interfering with the said spring, which deprived him of the water flowing therefrom, from the time the same was cut off by them until he commenced this action, amounting to the sum of twenty-five dollars.

He found as conclusion of law :

" *First* — The said Daniel R. Stow, at the time this action was commenced, had a cause of action against the defendants for an injunction restraining their acts of interference with the spring in question, then being committed, and the further acts of interference therewith which it was their purpose to perform.

" *Second* — By the will of the said Daniel R. Stow, no title

to his real estate vested in the executors, the plaintiffs, whose right and authority in respect thereto was only a power to sell and convey the same, and they, as plaintiffs, therefore, are not entitled to a judgment herein for an injunction.

"*Third*— The claim and cause of action stated in the complaint for damages sustained by the said Daniel R. Stow at the time he commenced the action, by reason of the defendants' interference with said spring, survived to the plaintiffs as his executors, and they are entitled to recover under the complaint herein the damages which said Stow had there sustained by reason of the unlawful acts of the defendants, in interfering with said spring and depriving him of the water flowing therefrom."

*Henry Smith*, for the appellants. The exception in the deed to the spring and the right of access to it to lay logs, etc., must be construed as subordinate to the right of the company to use the land for which it was granted. If the company was engaged in fixing and guarding the spring so that its use of the land would not impair the usefulness of the spring, it discharged its whole duty. (*Bloss* v. *Greeley*, 45 N. Y., 671; *Atkins* v. *Bordman*, 2 Metc., 467; Washburn on Easements [2d ed.], 246; *Johnson* v. *Kinnicutt*, 2 Cush., 153; *Barnes* v. *Burt*, 38 Conn., 541; *Austin* v. *Cox*, 118 Mass., 60; *French* v. *Carhart*, 1 N. Y., 96; *Ives* v. *Van Aukin*, 34 Barb., 566.) This action was for an injunction. The damages claimed were merely incidental. The referee therefore erred in turning it into an action of trespass, and finding that the executors could recover twenty-five dollars and costs. (*Bradley* v. *Aldrich*, 40 N. Y., 504; *Van Beck* v. *Village of Rondout*, 15 Abb., 49; affirmed, Ct. of App., 41 N. Y., 619; *Barnes* v. *Quigley*, 59 N. Y., 265.)

*Stephen C. Millard*, for the respondents.

BOCKES, J. :

A new trial must be granted in this case, if for no other reason, because of the admission of improper evidence upon the subject of damages.

According to the decision of the referee the case resolved itself into an action at law for damages suffered by the plaintiffs'

testator, caused by an unlawful interference on the part of the defendants with the testator's spring, and the cutting or removing by them of his water pipes leading therefrom to his premises, by reason of which he was deprived of the use of the water.

Let it be admitted that the defendants wrongfully interfered with the spring by digging in and around it, and also that they unlawfully cut and removed the water pipes leading from it, by reason of which the deceased was deprived of the use of the water for a time, then and in that case his damages would be such as he had sustained, because of being deprived of such use — in this case, during a part or all the time from August 15, 1871, to the commencement of this action, September eleventh or twelfth of the same year, a period of twenty-seven or twenty-eight days, and, in addition thereto, such expenses as he should necessarily incur in restoring the spring and pipes to a condition of usefulness.  Damages could not be allowed for injuries caused and suffered after the commencement of the action and the service of the injunction ; certainly not after the deceased had enjoined the defendants from restoring the spring to its original condition ; the deceased having the right, and having asserted it, to make the restoration himself, the defendants being willing and offering to do this for him.

It may be here remarked, that it seems, at least, doubtful whether the defendants had not in fact, prior to the commencement of the action, restored the spring and pipes to as good condition as they were in before they were interfered with.   (See the testimony of Mr. Gibbons, Mr. Paget and Mr. Wurtz, ff., 97, et seq.)   It is quite plain from the evidence that if the defendants had not been enjoined from carrying out their purpose, in which they were actually engaged, the spring and its usefulness to the defendant would have been greatly improved.   But there was no attempt to show the cost and expense of restoring the spring and pipes to their original condition.   This element of damages, if it existed in fact, was entirely ignored on the trial.   Therefore, the only damage for which a recovery was authorized under the proof in this case was such as was caused to the deceased by reason of the loss of the use of the water, and this for a few days only.   To establish the amount of damages so sustained,

the plaintiffs were allowed to prove the value of the spring to the farm of the deceased, before and after the defendants interference with it, as if such damages were permanent and the injury incapable of remedy. The witnesses estimated such damage at from $200 to $250, and one witness put it at a much larger sum. This evidence was admitted against objection, and the ruling was duly excepted to. Its admission was plainly erroneous. The value of the spring to the deceased's farm formed no criterion for an estimate of damages resulting from a deprivation of the use of its waters for a few specific days. The action was not brought to recover the difference in value of the general use of the spring to the farm before and after the defendant's interference with it. There was a short period of time during which the deceased was deprived of the use of the water. The question was, what amount of damages he had sustained by such deprivation, what sum would compensate him therefor. The spring might be worth a large sum to the farm to which it was an appurtenant, considered with reference to its enjoyment for all time, and yet the deceased might suffer little and perhaps no loss or damage at all from being deprived of its use for a few days on some particular occasion. There might be days when no damage would result from an inability to use the spring, because of no necessity or occasion for its use. The question was as to his convenience and necessities as regarded the use of the water during the days he was deprived of it. If he should have no occasion for its use for a time, he would suffer no damage from its disuse during that period, hence could recover at most but nominal damages for such deprivation. The evidence under consideration afforded no data from which the damages recoverable in this case could be estimated or computed; and this was the only proof submitted on the question of the amount of damages actually suffered by the deceased. The amount allowed is small, but there is no proper evidence to sustain a recovery even for this small sum. Without the objectionable proof the sum to be allowed was merely conjectural; and indeed with it, the case was no better; was worse in fact, because it must be assumed that such improper evidence had its influence as against even fair conjecture.

There was also error in the admission of evidence as to the condition in which the spring was permitted to remain after the commencement of the action down to the decedent's death.    If left unprotected the fault was with the deceased, who had asserted his right to control it, and had enjoined the defendant from in any manner interfering with it, and if a claim was intended to be made for anything done by the defendants after the commencement of the action, such claim was not within the issues made by the pleadings.    If any relief could be claimed in this suit for such action, on the part of the defendants, it should be obtained on motion for a violation of the injunction.

These conclusions lead, necessarily, to a reversal of the judgment.

But there is another ground of alleged error which should be considered.    It is urged that the action, as brought by the deceased, was in equity for an injunction, and that the damages claimed were but an incident, dependent upon the establishment of a right to equitable relief, and that inasmuch as the plaintiffs' failed to show such right in themselves they could not then convert the action into one at law for damages only.

The record shows that the action remained at the time of the trial the same as before the testator's decease.    The plaintiffs were substituted in the action by a simple order of revivor. The pleadings were not amended; there was no supplemental complaint put in.    It is conceded that the action failed as to any claim the plaintiffs could make to equitable relief.    Then did not the action abate on the death of the original plaintiff?    It is insisted, on their part, that the action survived, as to the damages, and that under the order of revivor, having been substituted as plaintiffs in the action, they may recover such damages as they might show the decedent to have sustained growing out of the wrongs charged against the defendants in the complaint.    We are inclined to sustain the plaintiffs' position in this regard.    The damages sought to be recovered belonged to them as the personal representatives of the deceased, and it was evidently supposed that by finding that the deceased had, according to the complaint and the proof given, grounds of equitable relief, then, for this reason, if for no other, the recovery of damages by the plaintiff might be sustained.    If the right of recovery by the plaintiff

rested on this position, it would have a very doubtful support on the facts proved. It is true the referee finds that the deceased, at the time the action was commenced, had a cause of action against the defendants in equity for an injunction. Now, admitting that this finding was one within the province of the referee to make, we are satisfied that it was unsupported by the proof.

The reservation to Mr. Stow (the grantor in the deed) of the spring issuing from the land granted, with the right of entry to repair and relay the water pipes which should conduct the water therefrom, was the reservation of an incorporial hereditament, a privilege reserved from the grant, and it must be construed like a grant of such right. Now a grant of such right would pass nothing as an incident save what was requisite to the fair enjoyment of the privilege granted. The deceased then had no other interest in the land save such as was requisite and necessary to the enjoyment of the privilege held by him. The title to the land passed to the grantee in the deed containing the reservation subject to the easement; and so the grantee had the right to use and enjoy the land in all lawful ways not inconsistent with the right reserved to the grantor. Therefore the railroad company had the right to lay its track over the spring, on protecting its waters from injury, to the end that the party entitled to the enjoyment of the easement should not be unnecessarily interrupted in his right. This being so were the defendants, when restrained, exercising any other than a lawful right? Was their action unreasonable in view of their own and Mr. Stow's rights? The company could not be deprived by Mr. Stow of all right to the use of the land at and about the spring. It had a right to make it useful, doing no unnecessary injury to Mr. Stow's rights, and not withholding from him an absolute use of the waters, save temporarily, while putting their property in condition for lawful enjoyment. It seems, from the evidence, that the railroad company were proceeding with tolerable rapidity and energy, and with due regard to the rights of Mr. Stow as to the manner in which it proposed to protect and preserve the spring for his absolute use. If some trifling and temporary inconvenience resulted to him from the company's *reasonable action*, he could have no cause of complaint any more than the

company would have cause of complaint against his reasonable action in keeping the spring in a condition of usefulness. Their rights were co-ordinate as well as mutual; so Mr. Stow could not arbitrarily restrain the company from a reasonable use of its land. Each party had rights which they might respectively exercise, and neither could justly complain of the other for doing that which was fair and reasonable in view of those rights. Under an application of this rule, the evidence failed to show that Mr. Stow, at the time he commenced his action, had a right of relief by injunction. The case was tried and decided upon the mistaken theory that the privilege reserved to Mr. Stow was paramount to and not at all subject to the reasonable use and the fair and lawful enjoyment of the land by the owner of the fee. This was proceeding in error as to the rights of the respective parties. It was laid down in *Atkins* v. *Bordman* (2 Met., 457, 467), that if a person has an easement in land, the owner of the fee has still all the beneficial use of it which he can have consistently with the other's enjoyment of that easement. This case is a very instructive one upon the question here under examination. (See also *Bliss* v. *Greeley*, 45 N. Y., 671, and the cases cited on page 674.) It may be said, perhaps, that in this view of the case there was no right of recovery shown for damages. The determination of this question is not necessary to the decision of this case on the appeal.

Let us now recur to the question whether damages can be recovered in an equity action where the plaintiff fails to establish his right to the equitable relief demanded. The authorities are to the effect that such recovery may be had. (*Marquat* v. *Marquat*, 12 N. Y., 336; *Phillips* v. *Gorham*, 17 id., 270; *Davis* v. *Morris*, 36 id., 569; *Barlow* v. *Scott*, 24 id., 40; *Hudson* v. *Caryl*, 44 id., 553; *Colman* v. *Dixon*, 50 id., 272; *Wheelock* v. *Lee*, 74 N. Y., 495.) It is held, however, that in such case the parties may, on demand, have the question of damages tried by jury. (See above cases.) All that was decided in *Bockes* v. *Lansing* (74 N. Y., 437) was this : That a referee on the trial had no power to change the cause of action from one for equitable relief to one in ejectment. This would be to change the cause of action in its entire scope and purpose. But in case the question

of damages should be sent to a jury for trial, would not the case be still deemed an action in equity, according to the pleadings, for the purpose of ordering judgment and awarding costs as in an equity suit? (*Quære.*) Then, however, according to the decision in *Van Wyck* v. *Baker* (11 Hun, 309), the successful party would be entitled to costs in cases in which a claim of title to real property should be raised on the pleading, or should be certified by the court to have come in question at the trial. These questions relating to final costs in the action are not here before the court for decision.

Judgment reversed, new trial granted, costs to abide the event, and reference discharged.

BOARDMAN, J., concurred; LEARNED, P. J., taking no part.

Judgment reversed, new trial granted, costs to abide event, referee discharged.