## City of New Albany v. Stier.

[No. 4,985. Filed November 18, 1904. Rehearing denied January 31, 1905. Transfer denied February 17, 1905.]

1. PLEADING.—*Construction.*—A pleading should be construed upon the theory which is most apparent and clearly outlined by the facts. p. 618.

2. STATUTES.—*Construction.*—*Intent.*—*How Ascertained.*—The courts, in order to ascertain the intent of a statute, will look to the letter thereof, to the statute as a whole, to the circumstances under which it was enacted, to the prior statutes on the same subject, if any, to the mischief aimed at, to other statutes, to the common law, and to the condition of affairs when the statute was enacted. p. 619.

3. PLEADING.—*Complaint.*—*Negligence.*—*Traction Engine.*—*Warning of Approach.*—Where the complaint alleges that plaintiff was injured by reason of the negligence of defendant city in failing to send a person 50 yards in advance of an engine used in street repairing, for the purpose of warning persons with horses, and that by reason of such failure plaintiff was injured, such complaint fails to state a cause of action, since an engine used in the repair of streets is not a "traction or road engine" within the meaning of the statute, §2044 Burns 1901. p. 621.

4. APPEAL AND ERROR.—*Transcript.*—*Change of Name of Party.*—A motion to dismiss an appeal because counsel changed the spelling of the name of the appellee is without merit where it is shown by counsel that it was done in good faith to correct, as he believed, an error in the spelling of such name, the name as corrected being *idem sonans* with the name in the record. p. 621.

From Floyd Circuit Court; *James K. Marsh*, Special Judge.

Action by Joseph Stier against the City of New Albany. From a judgment rendered upon a verdict for $1,200, the defendant appeals. *Reversed.*

*Joseph S. Foley* and *B. F. Watson*, for appellant.
*Herter & Hester*, for appellee.

WILEY, J.—Appellee recovered a judgment against appellant for personal injuries alleged to have resulted from its negligence. The amended complaint is in two paragraphs, to each of which a demurrer was overruled. Answer in denial. Appellant's motion for a new trial was overruled. Appellant asks a reversal upon two grounds: (1) That the trial court erred in overruling its demurrer to each paragraph of amended complaint; and (2) that it was error to overrule its motion for a new trial.

The only question discussed under the motion for a new trial is based upon the action of the court in giving instructions three and four. As these instructions relate to the same questions presented by the demurrer to the amended complaint, they may properly be considered in connection therewith. If the complaint states a cause of action, under the theory upon which it proceeds, then the instructions correctly stated the law applicable to the facts.

There is no material difference between the two paragraphs of complaint, and a statement of the facts relied upon in one will suffice for both. By the first paragraph the facts exhibited are as follows: Appellant is an incorporated city; it maintained a fire department; appellee was an employe of the city in its fire department; as such employe, one of his duties was to exercise the horses used for drawing fire engines; he was engaged in that duty when the horses he was exercising became frightened at an engine owned by the city, by its being propelled through one of the public streets, and appellant's neglecting to send some one at least fifty yards in front of the engine, to warn persons of its approach. The theory of the complaint will appear from the following averment: "Plaintiff further avers that the defendant was at said time, and for several years previous thereto had been, the owner of a traction or road engine, which was propelled by steam-power, and which was used by the defendant for the purpose of rolling and repairing

its macadamized and other streets; that on said day the said traction-engine of the defendant, being in charge of one of its servants and agents, who was acting for the city in that behalf, was being propelled and driven northwardly along said Thirteenth street of said city, and towards said engine-house, for the purpose of reaching a point on Vincennes street more than five blocks away, where it was to be used in street repairs, but not for the purpose of repairing said Thirteenth street; that when the plaintiff had come out of said engine-house and had reached said Market street with said horses as aforesaid, the said traction-engine had reached a point on said Thirteenth street about 120 feet south of said Market street, and about 160 feet distant from where the plaintiff was with said horses; that said traction-engine was then and there blowing off steam, and making loud and unusual noises, and allowing smoke to escape from the smoke-stack thereof, making unusual sights, all of which was naturally calculated to frighten horses and teams; that the defendant and its officers and agents wholly failed, while propelling and using said engine on said highway and street, as aforesaid, to send some person not less than fifty yards in advance of said engine, to warn all persons approaching, in charge of a horse or team, of his or their proximity to such engine; that if said defendant had sent some person in advance of said engine for said purpose, he would have been within thirty feet of the plaintiff, and could have so notified him of its approach, and that the plaintiff, being so notified, could have prevented said horses from running away. Plaintiff further says that he did not know of the approach of said traction-engine, nor that the same was in said neighborhood; that as a direct result of the failure of the defendant so to send some person in advance to give said warning, and in so failing to warn the plaintiff of the approach of said engine, and because of the presence of said engine at

said place, making said noises and presenting said unusual appearance, said horses in charge of. the plaintiff were caused to take fright and run away."

It is clear that appellee bases his right to recover upon the failure of appellant to perform a duty placed upon it by statute. That statute is as follows: "Any person or owner of a traction or road engine shall, while using the said engine on any public highway, street or alley of any incorporated town or city, send some person in advance of said engine, not less than fifty yards, to warn all persons approaching, who are in charge of a horse, team or teams, of their proximity to such engine." §2044 Burns 1901, Acts 1889, p. 428, §1. "And it shall be the duty of the engineer in charge of said engine, or the owner thereof, upon the approach of said horse, team or teams, to drive said engine to one side of the road or street, when practicable, and to stop said engine until said horse, team or teams have passed said engine, and the whistle of said engine shall not be sounded while said horse, team or teams are passing." §2045 Burns 1901, Acts 1889, supra. Section 2046 Burns 1901, Acts 1889, supra, fixes a penalty for a violation of any of the provisions of the statute. The title of this statute is as follows: "An act to make it unlawful for any person or any owner of any traction or road engine, to run the same or use the said engine upon the public highway, street or alley of any incorporated town or city in violation of this act, and fixing penalties for the violation of this act."

1. The rule by which the theory of a pleading is to be determined is well defined in this State, and that is, it must be construed upon the theory which is most apparent and clearly outlined by the facts stated in it. That is, it must be judged from its general scope and tenor, and must proceed upon some definite theory. *Boyd* v. *Bloom* (1899), 152 Ind. 152; *Cleveland, etc., R. Co.* v. *Stewart* (1900), 24 Ind. App. 374; *Pittsburgh, etc., R. Co.* v. *Sullivan*

(1895), 141 Ind. 83, 27 L. R. A. 840, 50 Am. St. 313. The theory of the complaint, measured by the rule above stated, is that appellee's injuries resulted from the failure of appellant to observe the duties imposed upon it by statute, in not sending some person fifty yards in front of a traction or road engine it was using on a public street, to warn persons who might be approaching in charge of horses. The force of the allegations in this regard are materially lessened, if not wholly destroyed, by the additional averment that the engine was to be used for "street repairs."

And this brings us to the consideration of the class of engines contemplated by the legislature in the act, and the evil or danger incident to the public it was intended to remedy or avoid. It is an historical fact that the use of "traction or road engines" had become quite prevalent in all rural districts of the State at about the time of the passage of this statute. They were in general use, and at certain seasons of the year were propelled upon and over public highways to draw and run threshing machines. Such engines were calculated to frighten horses. It was recognized that they were a modern and necessary improvement, and greatly to the interest of the farming community. They had a right to traverse the public highways, and, to protect the traveling public, the legislature wisely placed upon those who owned or operated them the duty of requiring them to send some person in advance to give warning to persons approaching who were in charge of horses. We have no doubt but that this was the purpose and intention of the legislature in passing the act. If the statute is applicable to cities, in operating steam-engines, in the improvement of streets, propelling street rollers, etc., then the facts pleaded state a cause of action.

2. We can not believe that the statute is applicable where steam-engines are used in cities, in the improvement of streets, for the application of the statute would be impracticable. Courts take into consideration common

knowledge and experience, and conditions existing, and objects to be attained by the legislature in enacting a law. The rule, succinctly stated, is as follows: "In order to ascertain the intention of the legislature the court should look to the letter of the statute, to it as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, to other statutes, to the rules of the common law, and to the condition of affairs when the statute was enacted." *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 233, 42 L. R. A. 826. The expression in the statute, "traction or road engine," as used by the legislature, and in the sense and connection in which it is used, does not embrace the character of engine used in propelling steam rollers, etc., used in the repair of streets. We know that "traction or road engines" are not so used.

We have a statute (§7083 Burns 1901, Acts 1893, p. 294, §1) which gives a right of action to an employe who may be injured by the negligence of a person in the service of a designated corporation, who has charge of a locomotive engine or train upon a railway, etc. In the case of *Jarvis* v. *Hitch* (1903), 161 Ind. 217, appellee was in the employ of appellant, who was receiver of a railway company, and was injured by the alleged negligence of a servant of appellant, who was in charge of a machine known as a piledriver. The pile-driver consisted of a steam-engine placed upon one end of a flat-car, and the driver, used in raising the hammer, placed at the other end of the car, all forming one machine, containing machinery by which the car was moved from place to place on the railroad track by means of the motive power of the engine. Appellee based his right to recover upon subdivision four of §7083, *supra,* known as the employers' liability act. The court, in construing the expression in the statute, "locomotive engine," said: "We think it is clear that the steam pile-driver was not a 'locomotive engine' within the meaning of said fourth subdivision of section one of the act of 1893 (Acts 1893,

p. 294, §7083 Burns 1901). By the term 'locomotive engine' used in said clause the legislature only intended an engine constructed and used for traction purposes on a railroad track." It was further held in that case that whether the machine alleged in the complaint to be a "locomotive engine" was such, within the meaning of said fourth subdivision, was a question to be determined by the court, and not by the jury. To the same effect is the case of *Murphy* v. *Wilson* (1883), 48 L. T. N. S. 788, 52 L. J. Q. B. D. 524, 525, to which we refer without comment.

3. While the complaint uses the language of the statute, in the first instance, in describing the engine, subsequent averments show that appellant was not violating the statute, in view of the whole context, for it is averred that it was to be used in repairing a street. A traction or road engine, as contemplated by the statute, is one which is propelled by steam, and used to go from place to place upon public highways, having motive power, not only sufficient to propel itself, but also to draw loads, and this is the character of engines the legislature had in mind when it used the expression "traction or road engine." We know that municipal corporations do not use traction or road engines for this purpose, and, in addition to this, the complaint itself shows that appellant was not using an engine of the character contemplated by the statute.

Construing the complaint most strongly against the pleader, and by the theory which is most apparent and clearly outlined by the facts stated in it, and according to its general scope and tenor, as we must, we are led to the conclusion that the theory of appellee's complaint is that he seeks a recovery upon the proposition that it was actionable negligence for appellant to neglect to send some one forward at least fifty yards to warn appellee, who was in charge of horses, and approaching the engine. Upon that theory the complaint does not state a cause of action.

4. Appellee has interposed a motion to dismiss the ap-

peal for the reason that the name of appellee, "Stirr," has been changed in the record to "Stier." The affidavits *pro* and *con*, in support of and against the motion, show that one of the counsel changed the name in the record, in good faith, honestly believing that the correct name was "Stier." In any event the two names are *idem sonans*. There is no merit in the motion, and it is overruled.

Judgment reversed, and the trial court is directed to sustain appellant's demurrer to the complaint.